In the Matter of SUSAN BARTON, on Behalf of Herself and All Others Similarly Situated, et al., Appellants-Respondents, v ABE LAVINE, as Commissioner of the New York State Department of Social Services, et al., Respondents-Appellants.

In the Matter of ROSIE L. BURTON, Respondent, v ABE LAVINE, as Commissioner of the New York State Department of Social Services, et al., Appellants.

Third Department, November 18, 1976

*Rene H. Reixach* for Susan Barton and others, appellants-respondents, and Rosie L. Burton, respondent.

*Louis J. Lefkowitz, Attorney-General (Alan W. Rubenstein* and *Jean M. Coon* of counsel), for Abe Lavine, as Commissioner of Social Services of State of New York.

*Robert Lyman, County Attorney (Stanley G. Walker, Jr.,* of counsel), for John Fahey, as Commissioner of Social Services of County of Albany.

HERLIHY, J. Effective January 1, 1974 the former program of public assistance to needy persons in the category of Aid to the Aged, Blind and Disabled (AABD) was replaced by title XVI of the Social Security Act entitled "Supplemental Secu-

rity Income for the Aged, Blind, and Disabled" (SSI) (Social Security Act, § 1601 *et seq.* U.S. Code, tit. 42, § 1381 *et seq.*). Section 303 of Public Law 92-603 accomplished the change from AABD to SSI and section 414 (subd [a], par [24]) of said Public Law (US Code, tit 42, § 602, subd [a], par [24]) provides in part: "[I]f any individual is receiving benefits under title XVI, then, for the period for which such benefits are received, such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this title and his income and resources shall not be counted as income and resources of a family under this title."

By a letter of instruction dated December 20, 1973 the Department of Health, Education and Welfare (HEW) construed the new program and instructed the State that where a needy household included a title XVI recipient, "the need, income, resources and amount of assistance should be determined as though the SSI beneficiary was not present in the home".

The appellant State commissioner construed the changes in the Federal statutes and the instructions from HEW as permitting the rental needs to be prorated where an SSI recipient was a member of the household which was receiving payments in the category of Aid to Families with Dependent Children (ADC) and, accordingly, the local authorities on and after January 1, 1974 would determine the need for shelter and prorate it as to any SSI recipients in the household. (See former 18 NYCRR 352.3 [c] promulgated April 30, 1974.)*

Petitioner Barton is an SSI recipient and the aunt and legal custodian of Clint Young on whose behalf she receives payments pursuant to the ADC program. While it is not entirely clear from the record, it appears that the amount of the rent actually paid by Barton for herself and her ward is the sum of $110 and that the local officials pursuant to the instructions of the State commissioner and former 18 NYCRR 352.3 (c) reduced that by one half to $55 as well as similarly reducing the amount for fuel. Petitioner Burton is also an SSI recipient receiving aid for her dependent son (ADC). Her shelter allow-

---

* 18 NYCRR 352.3 (c) (April 30, 1974) provided as follows: "For children or adults in receipt of public assistance residing with a non-legally-responsible person, the allowances for rent and other shelter costs shall be computed on a prorated basis but not in excess of the appropriate district maximum for the number of persons in the assistance grant."

ance was likewise reduced by one half as she and her son were the sole occupants of her residence.

These cases have been treated together on appeal as they raise identical questions of law.

In both of these cases the Special Term has found that any co-operative budgeting or proration based upon the presence of an SSI recipient in the household is precluded by the Federal statutes and by the regulations of HEW. As found by Justice HUGHES in the *Barton* decision herein: "The construction of a statute by the agency charged with its administration is entitled to great weight (see McKinney's Cons. Laws of N.Y., Statutes, § 129) and the court finds that HEW's instruction is controlling in the case at bar (cf. *Matter of Cisco v. Lavine,* 72 Misc 2d 1087, 1092; *Young v. Shuart,* 67 Misc 2d 689, 695, affd. 39 A D 2d 724)."

Upon these appeals, the State commissioner does not directly contest the holding that a proration of shelter and fuel was contrary to law, but the local commissioner does insist that such a holding was erroneous. We find that Special Term properly held that SSI beneficiaries were not to be counted in determining the needs of an ADC beneficiary for shelter and fuel (see *Matter of Barton v Lavine,* 38 NY2d 785; *Matter of Schimmel v Reed,* 50 AD2d 1085, affd 40 NY2d 887). Furthermore, the State commissioner in his brief points out that in a letter dated June 20, 1974 he was advised by the regional office of HEW that the proration was "contrary to Federal policy" and in a letter from the same office of August 9, 1974 that "the method of budgeting shelter costs in AFDC/SSI households fails to comply with the Federal requirements". There is no merit to any suggestion that a proration of shelter and fuel costs was proper.

The appellant State commissioner and the local commissioner contend that the court erred in directing that payments to the petitioners be made retroactive to January 1, 1974. The power of the court to order retroactive payments is well established *(Matter of Schimmel v Reed, supra; Matter of Uhrovick v Lavine,* 43 AD2d 481, affd 35 NY2d 892) and such a result is apparently mandated by Federal regulations (45 CFR 205.10 [a] [13]). The contention that the State commissioner acted in good faith in prorating benefits is not persuasive either as a question of fact or as a matter of law.

For the foregoing reasons the appeals of the State commissioner and the Albany County commissioner are rejected and

it is found that Special Term properly granted relief to the petitioners.

The petitioner Barton contends that Special Term erred in refusing to grant class action relief. Class action relief in proceedings such as the instant cases has recently been denied *(Matter of Schimmel v Reed, supra; Matter of Uhrovick v Lavine, supra; Matter of Adkin v Berger,* 50 AD2d 459, 462).

The petitioner Barton additionally contends that the new class action statute, CPLR (art 9), effective September 1, 1975, should be applied even though these actions were commenced prior to its effective date. In *Matter of Shook v Lavine* (49 AD2d 238, 243, 244) the Fourth Department refused to apply the new CPLR provisions so as to permit a class action. In the present cases it is readily apparent that every member of the class had an administrative remedy available and we do not find that opening the proceedings to a class at the level of an article 78 proceeding would be appropriate. Furthermore, the statute is procedural in nature and unlike the original CPLR (CPLR 10003) there is no provision expressing an intent that it be applied retroactively to pending proceedings *(Simonson v International Bank,* 14 NY2d 281, 289). Upon the present record we find that class action relief was properly denied.

As a result of the Federal statute and interpretation by HEW, when two people live in the same premises and obviously contribute to mutual expenses such as rent or heat and lights, but are in different categories of public support for payment purposes, the SSI recipient would receive the benefit of public moneys apparently in duplication of the SSI payment. From the present record it is not entirely clear that Congress really intended to provide such a direct avenue of support of SSI recipients which, as a practical matter, discriminates in terms of dollars and cents received against those SSI recipients as do not choose to reside with recipients of other forms of welfare benefits. Our decision in this case is mandated by the interpretation of the congressional intent by Federal rules and regulations and the anomalous or inequitable result should be directed to the attention of Congress and the Department of Health, Education and Welfare (cf. *Nelson v Likins,* 510 F2d 414, affg 389 F Supp 1234).

The judgments should be affirmed, without costs.

LARKIN, J. (concurring in part and dissenting in part).

Petitioner Barton is the recipient of public assistance funds under title XVI of the Social Security Act (Supplemental Security Income for the Aged, Blind, and Disabled [SSI]). She also receives public assistance funds for her nephew, Clint Young, who resides with her, under the Aid to Families with Dependent Children category (ADC). Petitioner Burton is an SSI recipient and is also receiving a grant under ADC for her son. Since the SSI benefits are for a person's maintenance, including shelter and fuel, the respondent, in the initial determinations giving rise to these appeals, prorated the ADC shelter and fuel allowances in each of these two-person households to prevent the obvious duplication of rent and fuel allowances.

The appropriate Federal statutes (Social Security Act, § 1601 *et seq.* [US Code, tit 42, § 1381 *et seq.]*), and the directives of the United States Department of Health, Education and Welfare (HEW), provide that "the need, income, resources and amount of (the ADC) assistance payment should be determined as though the SSI beneficiary were not present in the home" (HEW Program Instruction, APA-PI-74-8, dated Dec. 20, 1973). After receiving notice from HEW that its policy of prorating duplicate payments to the same household "failed to comply with Federal requirements", New York State, through respondent Commissioner Lavine, acquiesced and, on October 16, 1974, through State Administrative Letter 74 ADM-151, changed its policy to reflect HEW's demands. In view of the said administrative letter, the Attorney-General does not now argue that shelter and fuel costs may be prorated in ADC/SSI households. The result of this fiction, of course, is that New York State is now precluded from prorating rent and fuel allowances to persons living together when each receives public assistance containing an allocation for rent and fuel.

Although the majority, in light of the said acquiescence of New York State to HEW, correctly determined that it should not disturb these apparently duplicate payments, the policy is particularly difficult to understand when viewed in the context of an economic climate which makes it difficult for many hard working wage earners, oppressed by heavy tax burdens, caused in considerable part by policies such as the one in issue herein, to save enough money each month to pay their rent and fuel bills. I fully concur in the suggestion by the majority that this "anomalous or inequitable result should be directed

to the attention of Congress and the Department of Health, Education and Welfare".

I disagree, however, with that portion of the majority opinion which orders retroactive payment of these duplicate amounts. In my view such repayment should not be required absent a finding of willful violations of the Federal requirements by New York State. I find no such willful violation. On the contrary, I find that New York State's attempt to equitably distribute the funds in its public assistance budget was thwarted by Federal directives which could not have been reasonably predicted. Such retroactive payments will constitute nothing less than a "cash bonus" to certain public assistance recipients beyond the "windfall" they will receive each month under the apparent duplicate payment policy described herein.

KOREMAN, P. J., GREENBLOTT and MAIN, JJ., concur with HERLIHY, J.; LARKIN, J., concurs in part and dissents in part in a separate opinion.

Judgments affirmed, without costs.